UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **BRUCE ALEXANDER** | **CASE NO. 3:19-CV-00738** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ANHEUSER-BUSCH, et al.** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, are compound motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) filed by defendants Anheuser-Busch InBev Worldwide, Inc. ("AB Worldwide"), Carlos Brito, and Joao Mauricio Giffoni de Castro Neves [doc. # 9], and by defendant Anheuser-Busch, LLC ("AB"). [doc. # 16], and a motion to set aside AB's motion to dismiss. [doc. # 20]. For reasons assigned below, it is recommended that the Rule 12(b)(2) motions be GRANTED and it is ordered that the motion to set aside is DENIED.

As an initial matter, the undersigned will address the motion to set aside AB's motion.

**Ruling on Motion to Set Aside/Motion to Strike**

Alexander filed a motion to set aside the motion to dismiss filed by AB, claiming that it is redundant, i.e., duplicative of AB Worldwide and the individual defendants' motion. [doc. # 20]. On October 4, 2019, AB filed its memorandum in opposition. [doc. # 22]. The motion is ripe.

A motion to set aside is an application to overturn or set aside a court's judgment, verdict, or other final ruling in a case. There has been no final ruling in this case, so a motion to set aside is improper. Because the plaintiff is pro se, the court will construe his pleadings liberally, deem

1

Alexander's motion to be a motion to strike the pleading to which he objects, and review his motion on the merits.

Alexander argues that Anheuser-Busch, LLC's motion to dismiss should be stricken because it is duplicative of the motion previously filed by Anheuser Busch, InBev Worldwide, Inc. However, Anheuser-Busch, LLC, the defendant who filed the September 9th motion to dismiss, is distinct from Anheuser Busch, InBev Worldwide, Inc., the defendant who filed the July 24th motion to dismiss. Accordingly, the September 9th motion to dismiss is not redundant and Alexander's motion to strike is hereby **DENIED**.

## Procedural History

This litigation arises out of an alleged failure by the defendants to protect plaintiff from harm sustained via the poisoning of his Bud Light, Budweiser, and Busch Beer beverages. On June 11, 2019, pro se plaintiff Bruce Alexander filed the instant petition against AB Worldwide, Castro Neves, Brito, and Anheuser Busch,[1] asserting subject-matter jurisdiction on the basis of diversity of citizenship. Alexander had previously sued President Donald Trump, FBI Director Christopher Wray, Governor John B. Edwards, and Mayor of the City of Bastrop Henry Cotton for their failure to prevent the harm Alexander allegedly suffered from poisoning. *See Alexander v. Trump, et al.*, No.17-1081, 2018 WL 1976478, at *5 (W.D. La. Apr. 12, 2018), aff'd, 753 Fed. App'x 201, 209 (5th Cir. 2018). The undersigned recommended dismissal of that complaint, the district court adopted the report and recommendation, and the Fifth Circuit affirmed. *Id.*

---

[1] Alexander failed to properly identify Anheuser Busch, LLC in his original complaint.

2

On July 23, 2019, AB Worldwide, Brito, and Castro Nieves filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. [doc. # 9]. On September 9, 2019, AB filed a separate motion to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. [doc. # 16]. That same day, Alexander filed his memorandum in opposition to the defendants' motions. [doc. # 18]. On September 19, 2019, defendants filed their reply to Alexander's memorandum. [doc. # 19 These matters are now ripe.

## The Complaint[2]

### A. *Plaintiff's Factual Allegations.*

In November 2006, Alexander was summoned to testify as a witness at a murder trial in Farmerville, Union Parish, Louisiana. The criminal defendant's father hired the Sheriff of Morehouse Parish, the Chief of Police for the City of Bastrop, and the local division of the Federal Bureau of Investigation in Monroe, Louisiana (collectively, "the Conspirators") to murder Alexander. The Conspirators allegedly bugged and tapped his phone, put tracking devices in his automobile, listening and video devices in his home, and placed constant surveillance on Alexander. Because the Conspirators always knew Alexander's whereabouts, they started to poison the things he drank, including his Bud Light, Budweiser, and Busch Beer. Alexander reached out to Anheuser-Busch headquarters and its CEOs, but was ignored. As a result of this poisoning, Alexander suffered heart attacks, blood loss, and other ailments.

---

[2] In this section, the undersigned summarizes Plaintiff's allegations and claims set forth in his Complaint. The undersigned accepts Plaintiff's factual allegations as true for the purpose of the Rule 12(b)(2) motions only. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955)(2007)).

3

### B. *Plaintiff's claims.*

Alexander makes the same general claims against AB, AB Worldwide, Castro Neves, and Brito. He says that the defendants failed to properly maintain their products, failed to establish and assure the function of a bona fide and meaningful departmental system for dealing with complaints or misconduct of their distributors, failed to stop the organized crime occurring in their stores, and failed to take action after the matter was brought to their attention via certified letter.

### C. *Plaintiff's Request for Relief.*

Plaintiff requests that the Court grant him $55,000,000.00 for his physical and mental pain and suffering and mental anguish and for future pain and suffering plus medical bills. He also asks for $150,000,000.00 in punitive damages.

## Analysis

### 1. Motion to Dismiss Pursuant to Rule 12(b)(2)

#### A. *Legal Standard.*

The Federal Rules of Civil Procedure sanction dismissal where the court lacks personal jurisdiction. FED. R. CIV. P. 12(b)(2). Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed. 2d 760 (1999). When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction exists. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the nonmoving party need only make a prima facie showing; '[p]roof by a preponderance of the evidence is not

4

required.'" *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F.Supp.3d 586, 591 (E.D. La. 2015)(quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution, La. R.S. § 13:3201(B), the sole issue here is whether exercising personal jurisdiction over the non-resident defendants comports with federal due process. *Jackson v. Tanfoglio Giuseppe*, S.R.L., 615 F.3d 579, 584 (5th Cir. 2010)(citation omitted).

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish that (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Minimum contacts may give rise to either "general" or "specific" jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S.Ct. 1773, 1780 (2017). General jurisdiction is proper when the defendant's contacts with the forum state are not only "substantial" but also "continuous and systematic"; furthermore, such contacts need not relate to the pending litigation. *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S.Ct. 746, 754 (2014). Therefore, general jurisdiction is typically unavailable unless it can be fairly said that the defendant is "at home

5

in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 2851 (2011).

"When the contacts are less extensive, the court may still exercise specific personal jurisdiction where a 'nonresident defendant' has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.*, 615 F.3d 364, 368 (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod Co.*, 517 F.3d 235, 243 (5th Cir. 2008). Stated differently, "[s]pecific or case-linked jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 1125, n.6 (2014) (citations and internal quotation marks omitted).

The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir.2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir.2006)).

If a plaintiff can successfully establish the first two prongs, then the burden shifts to the defendant to show that exercising jurisdiction would prove unfair or unreasonable. *Id*.

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden, supra.* The court must look to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id.* (citation omitted). In other words, "[d]ue process requires that a defendant be

6

haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (citation omitted).

"Even if 'minimum contacts' exist, the exercise of personal jurisdiction over a non-resident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends 'traditional notions of fair play and substantial justice.'" *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993)(citations omitted). In determining this "fundamental fairness" issue, courts examine a number of factors such as "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Id.*

When, as here, "a nonresident defendant timely questions a federal district court's *in personam* jurisdiction over [him], the plaintiff asserting jurisdiction has the burden of proving that the court has jurisdiction over the defendant." *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831–32 (5th Cir.1986), on reh'g in part, 836 F.2d 850 (5th Cir.1988) (citations omitted). If the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, then plaintiff need make only a prima facie showing of the jurisdictional facts. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). In assessing whether plaintiff has made a prima facie showing, the court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits

7

and other documentation." *Id.* (citation and internal quotation marks omitted).[2] The court need not credit plaintiff's conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001) (citations omitted).

### B. Plaintiff's claims against Castro Neves and Brito.

In his claims against Carlos Brito and Joao Castro Neves, Alexander asserts that the "CEO's failed to maintain control over [Anheuser-Busch] products and how they were distributed, failed to establish and assure the function of a bona fide and meaningful departmental system for dealing with complaints or misconduct of its distributors, and should have known about the corruption and the widespread organized crime that's taken place." Brito is the CEO of Anheuser-Busch InBev SA/NV, a Belgian company, while Castro Neves is the former Zone President, North America, of Anheuser-Busch Companies, LLC. [doc. # 10-1]. In response to Alexander's allegations, Castro Neves and Brito argue the exercise of personal jurisdiction is precluded by the fiduciary shield doctrine because their contacts with the forum state were solely in their capacities as corporate officers.

The fiduciary shield doctrine holds that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual even though the state has *in personam* jurisdiction over the corporation." *Stuart v. Spademan*, 772 F.2d 1185 at 1197 (5th Cir. 1985). *See also, FloQuip, Inc. v. Chem Rock Technologies*, Civil No. 16-35, 2016 WL 4574436, at *12 (W.D. La. June 20, 2016). While the general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation, courts have

---

[2] Of course, even if plaintiff was to avoid a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he still would be required to prove the jurisdictional facts at trial by a preponderance of the evidence. *Travelers Indem. Co., supra.*

8

recognized two exceptions to this rule. First, courts may disregard the corporate form and exercise jurisdiction when the corporation is the alter ego of the individual. *Spademan*, 772 F.2d at 1197. Second, the court may exercise personal jurisdiction over an officer who allegedly committed an intentional tort directed at the forum state. *FloQuip, Inc.*, 2016 WL 4574436, at *12.

The fiduciary shield doctrine is not concerned with liability. It is concerned with personal jurisdiction, and specifically with the fairness of asserting jurisdiction over a person who is acting solely in the interests of another. *Marine Midland Bank v. Miller*, 664 F.2d 899, 903 (2d Cir. 1981). Accordingly, courts should employ a less stringent standard in applying the fiduciary shield doctrine than they would in determining whether to pierce the corporate veil. *Id*.

In the present case, the undersigned finds that the fiduciary shield doctrine bars the court from exercising jurisdiction over both Brito and Castro Nieves. There is simply no allegation that either defendant was acting on his own behalf. Alexander has made no showing that either Brito or Castro Nieves should be considered the alter ego of AB or AB Worldwide, nor does he assert an intentional tort claim. Accordingly, the undersigned recommends that the respective claims against Brito and Castro Nieves be dismissed for lack of personal jurisdiction.

### C. Plaintiff's claims against AB Worldwide.

AB Worldwide argues that general jurisdiction is precluded by the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117, 134 S.Ct. 746 (2014). *Daimler* established the stringent requirements for general jurisdiction. There, the defendant was a German Corporation sued in California. *Daimler*, 134 S. Ct. at 750-51. Plaintiffs sought to assert general jurisdiction over the defendant based on the alleged "substantial, continuous, and systematic" contacts in California of its subsidiary. The contacts in California included: (1) MBUSA (which was the

9

exclusive importer and distributor of Daimler's vehicles in the United States); (2) multiple California-based facilities including a regional office, a Vehicle Preparation Center, and a Classic Center; and (3) ten percent of the subsidiary's United States' sales and 2.4% of Daimler's worldwide sales. *Id.* at 752. The Supreme Court held these contacts with California were insufficient to make Daimler "at home" in California such that general jurisdiction was present. *Id.* at 761-62.

In the present case, AB Worldwide is a Delaware corporation with its principal place of business in Missouri. As attested to in its Associate General Counsel Kristi M. Byrne's declaration, AB Worldwide maintains no business presence in Louisiana and owns no ownership interest in independent, authorized wholesalers operating in Louisiana. AB Worldwide is not registered to do nor has it ever done business in the State of Louisiana. [doc. 10-1, Declaration of Kristi Byrne]. Thus, AB Worldwide's contacts with Louisiana are significantly fewer than the corporate defendant's contacts with California in *Daimler*.

In response, Alexander claims that general jurisdiction exists because Kristi Byrne's declaration states that "she is familiar with the business and operations of The Anheuser-Busch companies, including Anheuser-Busch In Bev Worldwide, Inc. in the State of Louisiana." The emphasis he places upon Byrne's statement is misguided: Byrne merely says she is familiar with AB Worldwide's business operations, or lack thereof, in Louisiana. The evidence presented by Alexander does not establish general jurisdiction in Louisiana. AB Worldwide is not at home in Louisiana and has no contacts with Louisiana that approach the degree of "substantial" and "continuous and systematic" required for purposes of general personal jurisdiction.

Second, AB Worldwide argues that it does not have any Louisiana contacts connected to the alleged hit men and that the complaint does not provide factual allegations connecting the defendants to the hit-men and local law enforcement contacts who supposedly poisoned Alexander's beer. Moreover, AB Worldwide argues that it would be unduly burdensome for it to be haled into a Louisiana district court. In response, Alexander contends the stream of commerce theory—in this case, the alcoholic beverages brought into Louisiana—allows the court to have jurisdiction.

Specific jurisdiction over a nonresident corporation is appropriate when that corporation has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *Alpine View*, 205 F.3d at 215 (quoting *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Specific personal jurisdiction cannot rest on "random, fortuitous, or tentative" connections. *Burger King*, 471 U.S. at 475.

Alexander has not met his burden of showing that the court has personal jurisdiction over AB Worldwide. The allegations in this case are distinct from a products liability case in which the allegations are solely that the plaintiff purchased defective beer. Instead, Alexander's claim centers around the existence of a conspiracy between AB Worldwide and its purported local contacts in Louisiana. He does not properly allege the existence of a conspiracy that arises from any contacts of AB Worldwide in Louisiana. In fact, he does not show that AB Worldwide had any contact with any of the alleged conspirators or "purposefully availed" itself of Louisiana law by interacting with Louisiana residents.

Moreover, the exercise of jurisdiction in this case would not be fair or reasonable. While Louisiana should be concerned about allegations that one of its citizens is being poisoned, it does not need to concern itself when the plaintiff alleges an implausible and conclusory connection to an out-of-state defendant. Moreover, the burden of asking an out-of-state defendant with no connection to the alleged local conspirators to come to Louisiana and defend itself is far too high. Accordingly, the undersigned finds that this court does not have specific jurisdiction over AB Worldwide.

### D. Plaintiff's claims against Anheuser-Busch, LLC.

Alexander makes the same allegations against AB as it does against AB Worldwide, Brito, and Castro Neves. Thus, AB's purported role in the claims giving rise to this case is the same as AB Worldwide's

As discussed above, the paradigm forum for a corporation is its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137. AB is a Missouri Limited Liability Company which is 100% owned by Anheuser-Busch Companies, LLC, a Delaware Limited Liability Company which is in turn 100% owned by AB Worldwide.[3] Alexander provides no evidence suggesting that AB has the systematic and continuous presence in Louisiana required to find it essentially at home in the state. Moreover, AB has only seven total employees in Louisiana, and Louisiana sales account for only 2% of its United States sales. *See* doc. # 16-2, Declaration of Kristi M. Byrne, at ¶¶ 7-8. These contacts are insufficient to make AB at home in Louisiana.

---

[3] On October 16, 2019, AB provided the court with a statement tracing the members of the LLC down to AB Worldwide, a corporation.

12

Accordingly, the undersigned recommends finding that the court does not have general jurisdiction over AB.

Furthermore, the court finds that it lacks specific jurisdiction over AB. Alexander contends that AB conspired with local Louisiana contacts to poison his beer, but he again fails to provide evidence showing that AB has any connection with the alleged conspirators in Louisiana. Because AB has not purposefully availed itself of the benefits and protections of Louisiana law through minimum contacts related to the cause of action, exercising specific jurisdiction over it would be improper. *See Walden v. Fiore*, 571 U.S. 277, 284-85, 134 S.Ct. 1115, 1122-23 (2014). Accordingly, the undersigned finds that the court lacks personal jurisdiction over AB, and recommends dismissal on that basis.

## **II. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Should the District Court disagree with the above findings on the issue of personal jurisdiction, for the reasons stated below, it is alternatively recommended that the defendants' motions to dismiss for failure to state a claim for which relief can be granted be GRANTED and this case be dismissed with prejudice.

### *A. Legal Standard.*

Federal Rule of Civil Procedure 12(b)(6) sanctions dismissal when the plaintiff fails to state a claim upon which relief can be granted. A pleading states a claim for relief, inter alia, when it contains a "short and plain statement…showing that the pleader is entitled to relief…" FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is 'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

13

129 S. Ct. 1937, 1949 (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate to possibility or probability; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

Rule 12(b)(6) does not allow a court to dismiss a plaintiff's complaint merely because the court does not believe the plaintiff's factual allegations. But dismissal may nonetheless be appropriate when the facts set forth in the complaint are clearly baseless because they are fanciful, fantastic, or delusional. *See, e.g., Kimberly v. Kardashian*, 2012 WL 3257857, at *2 (W.D. La. 2012)(dismissing as delusional a complaint claiming Kim Kardashian assaulted complainant after he saw her making a sex tape); *Whitehead v. White & Case, LLP*, 2012 WL 1795151 (W.D. La. 2012)(dismissing as delusional a complaint that alleged a lifelong broad-ranging conspiracy against the plaintiff by scores of federal judges and other persons). A complaint is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in fact "if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (citations omitted). "As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id*.

**B. Analysis.**

In this case, Alexander alleges a conspiracy between law enforcement and the defendants to poison him by placing poison into his beer. Such a conspiracy strains credulity. Thus, as an alternative to dismissing the complaint on personal jurisdiction grounds, the undersigned has little difficulty concluding that Alexander's claims against the current defendants are patently and inarguably baseless, fanciful, fantastic, or delusional. This conclusion is buttressed by the fact that Alexander's almost identical, and equally fantastical and baseless, suit claiming that high-level government officials conspired with local law enforcement to poison him has already been dismissed as frivolous. This lawsuit merely adds the current defendants to the rank of alleged co-conspirators. Such a claim only consumes the resources of the court and delays justice for citizens with legitimate business before the court.

Alexander therefore fails to state a claim for relief against any of the defendants, and, if the district judge finds that the court has personal jurisdiction over the defendants, then Alexander's claims should be dismissed pursuant to Fed. R. Civ. P 12(b)(6).

## Conclusion

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion to set aside/motion to strike is **DENIED**.[4]

**FURTHERMORE, IT IS RECOMMENDED** defendants Anheuser-Busch InBev Worldwide, Inc., Carlos Brito, and Joao Mauricio Giffoni de Castro Neves and Anheuser-Busch, LLC's motions to dismiss pursuant to Fed. R. Civ. P 12(b)(2) be **GRANTED**. Alternatively, it is

---

[4] As this motion is not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

recommended that defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be **GRANTED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, shall bar an aggrieved party, except on the grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

In Chambers, at Monroe, Louisiana, this 24th day of October 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE